**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| CHRISTIAN BETE, | : | Civil No. 11-6405 (SRC) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ERIC H. HOLDER, JR., et al., | : | |
| | : | |
| Respondents. | : | |

---

**APPEARANCES**:

> CHRISTIAN BETE, A 200 767 060
> Essex County Correctional Facility
> 354 Doremus Avenue
> Newark, New Jersey 07105
> Petitioner Pro Se

> CHARLES SCOTT GRAYBOW, Assistant United States Attorney
> UNITED STATES ATTORNEY
> 970 Broad Street, Room 700
> Newark, New Jersey  07102
> Attorneys for Respondents

**CHESLER**, District Judge:

On October 26, 2011, Christian Bete, a native and citizen of Zimbabwe, filed a Petition

for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal period

mandatory detention, pursuant to 8 U.S.C. § 1226(c), in the custody of respondents and the

Department of Homeland Security ("DHS"), since March 25, 2011.  Respondents filed an

Answer, a declaration, and several exhibits, and Petitioner filed a Reply.  After respondents

informed this Court that on February 23, 2012, the Third Circuit had stayed the order of removal

pending its decision on Bete's petition for review, this Court ordered a supplemental answer, which respondents filed on March 20, 2012.  Because Bete filed his § 2241 Petition when he was detained for only six months and his current detention of 12 months has not become unreasonable in length, this Court will dismiss the Petition.  The dismissal is without prejudice to the filing of a new § 2241 petition by Bete in the event that his detention becomes unreasonably prolonged within the meaning of Diop v. ICE/Homeland Security, 656 F.3d 221 (3d Cir. 2011), and Leslie v. Attorney General of the U.S., ___ F.3d ___, 2012 WL 898614 (Mar. 19, 2012).

## I.  BACKGROUND

Christian Bete, a native and citizen of Zimbabwe, challenges his detention in the custody of DHS at Essex County Correctional Facility in Newark, New Jersey.  The facts are undisputed. Bete was admitted to the United States on August 22, 1998, as a non-immigrant visitor for pleasure with authorization to remain until February 19, 1999.  On August 23, 2007, the Superior Court of Douglas County, Georgia, entered an order in Georgia v. Bete, Crim. No. 07CR00867-A order (Ga. Super. Ct., Douglas County, Aug. 23, 2007) (Dkt. 15-2 at 2), for first offender treatment.[1]

---

[1] The order indicates that Bete pled guilty to fraudulent insurance claims, theft by taking, and fraud-financial identity and provides that "no adjudication of guilt has been made subsequent to the entry of the plea" and that "it is the judgment of the Court that no judgment of guilt be imposed at this time but that further proceedings are deferred and the defendant is hereby sentenced to confinement for the period of FIVE YEARS [and] upon service of NINETY DAYS, the remainder of SENTENCE may be served on probation; PROVIDED, that the defendant complies with the following general and special conditions herein imposed as part of this sentence . . . .  Upon fulfillment of the terms of this sentence, or upon release of the defendant by the Court prior to the termination of this sentence, the defendant shall stand discharged of said offense without court adjudication of guilt and shall be completely exonerated of guilt of said offense charged."  (Dkt. 15-2 at 2.)  Bete states that on May 11, 2012, he filed a petition for writ of habeas corpus in the Superior Court of Georgia challenging the plea on August 24, 2007, and

(continued...)

On March 25, 2011, DHS served a notice to appear on Bete, charging him with removal pursuant to 8 U.S.C. § 1227(a)(1)(B) because, after admission as a nonimmigrant under § 101(a)(15) of the INA, Bete remained in the United States for a time longer than permitted.  (Dkt. 7-2 at 6.)  DHS took Bete into custody on that date pursuant to a warrant for his arrest,[2] and notified him of its determination that he would be detained pending a final determination on his removal.  (Id. at 9, 13.)  On March 31, 2011, the Immigration Court scheduled a hearing for April 14, 2011 (id. at 15), but on that date Immigration Judge Leo A. Finston issued an order indicating that "no action" would be taken as to custody at that time and rescheduling the matter for May 4, 2011 (id. at 19, 21).  On May 4, 2011, the Immigration Court notified the parties that the matter would be heard on June 20, 2011.  (Id. at 36.)  By order issued May 17, 2011, Immigration Judge Finston denied Bete's request for a change in custody status on the ground that Bete was subject to "mandatory custody."  (Id. at 38.)  Bete appealed this order to the BIA and on August 2, 2011, the BIA denied the appeal as untimely.[3]  (Id. at 41.)

On June 10, 2011, through counsel, Bete filed a motion to continue the June 20, 2011, merits hearing before Immigration Judge Finston, for 21 days in order to obtain documents from Zimbabwe to support his application for withholding of removal and withholding and deferral under the Convention Against Torture.  (Dkt. 7-3 at 16 to 18.)  The Immigration Judge

---

[1](...continued)
this habeas petition is pending before the Georgia courts.  (Dkt. 10-1 at 1, 9.)

[2] Bete has been detained since March 25, 2011, to date.

[3] On August 31, 2011, Bete filed a motion to reconsider the dismissal of the appeal as untimely (Dkt. 7-3 at 2); the record does not appear to include the BIA's decision on this motion, which this Court presumes was denied.

presumably granted the motion, as the merits hearing was next scheduled for August 2, 2011. (Id. at 22.)  After conducting a hearing, on August 2, 2011, Immigration Judge Finston denied the applications and ordered Bete removed to Zimbabwe as a alien who after admission as a nonimmigrant has remained in the United States for a time longer than permitted.  (Id. at 7-3 at 24; 7-3 at 30 to 40.)   Bete appealed to the BIA.

On October 26, 2011, Bete executed the § 2241 Petition presently before this Court. (Dkt. 1.)  The Clerk accepted it for filing on November 1, 2011.  By Order entered November 16, 2011, this Court ordered the Clerk to serve and respondents to answer the Petition.  (Dkt. 2.)   In the meantime, on December 22, 2011, the BIA dismissed the appeal, finding that Bete "has not established his eligibility for withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3) or under the CAT, 8 C.F.R. §§ 1208.16(c) - .18."  (Dkt. 7-3 at 28.)  On December 30, 2011, respondents filed the Answer, together with a declaration and numerous exhibits.  (Dkt. 7.)  Respondents argued:  (1) the Petition was moot because, in light of the BIA's order dismissing the appeal on December 22, 2011, Bete's detention was no longer governed by 8 U.S.C. § 1226(c); and (2) Bete's detention since March 25, 2011, was not unreasonably prolonged such that it violated due process under Diop.  Id.

On January 27, 2012, Bete filed a "Motion In Response To Respondents' Opposition And Answer to Petitioner's Petition for Writ of Habeas Corpus."  (Dkt. 10.)  Citing Judge Vanaskie's opinion in Oyedeji v. Ashcroft, 332 F. Supp. 2d 747 (M.D. Pa. 2004), he argued that he "should not be penalized for seeking relief that the law warrants Petitioner to.  Put another way, Petitioner should not be faulted for exercising his Due Process Rights."  (Dkt. 10 at 3.)

4

On March 1, 2012, respondents notified this Court that on February 23, 2012, the Third

Circuit had granted Bete's motion to stay the order of removal pending the outcome of Bete's

petition for review, which was docketed on January 11, 2012.  See Bete v. Attorney General of

United States, C.A. 12-1075 order (3d Cir. Feb. 23, 2012) (Dkt. 11.)  By Order entered March 6,

2012, this Court ordered respondents to file a supplemental answer showing (a) the factual basis

for detaining Bete pursuant to 8 U.S.C. § 1226(c) where the order of removal was based on 8

U.S.C. § 1227(a)(1)(B), and (b) why Bete's detention since March 25, 2011, is not

unconstitutional under Diop in light of the stay of removal ordered by the Third Circuit.  (Dkt.

13.)

On March 20, 2012, respondents filed a Supplemental Answer, together with a

declaration and exhibits.  Respondents argue in relevant part that Bete's 12-month period of pre-

removal period detention, in contrast to the three years found unreasonable in Diop and the four

years found unreasonable in Leslie, is not unreasonably long, and there is nothing indicating that

the Court of Appeals will take two years to resolve Bete's petition for review.  (Dkt. 15 at 11-12.)

On March 26, 2012, Bete filed a request to supplement the record.  (Dkt. 16.)  Attached to the

request are a memorandum to the Board of Immigration Appeals from Petitioner's then attorney

dated November 22, 2011, and the Board's decision dated December 22, 2011 (which

respondents had previously filed with the Answer).

## II.  DISCUSSION

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . .

[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); <u>Maleng v. Cook</u>, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241 because Bete was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, <u>see</u> <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention is not statutorily authorized and violates due process. <u>See</u> <u>Zadvydas v. Davis</u>, 533 U.S. 678, 699 (2001); <u>Diop v. ICE/Homeland Security</u>, 656 F. 3d 221, 226 (3d Cir. 2011).

<u>B.  Relevant Statutes</u>

The statutory authority to detain an alien depends on where the alien is in the removal process. Section 1226 governs the pre-removal-period detention of an alien; § 1231(a)(2) mandates detention during the removal period established in § 1231(a)(1)(B); and § 1231(a)(6) provides the Attorney General with discretionary authority to detain aliens beyond the removal period, or release them under supervision. <u>See</u> 8 U.S.C. §§ 1226, 1231.

Section 1226(a) authorizes the arrest, detention and release of aliens pending a decision on whether the alien is to be removed from the United States, except as provided in § 1226(c).[4] <u>See</u> 8 U.S.C. § 1226(a). Section § 1226(c), an exception to § 1226(a), mandates detention of specified criminal aliens during removal proceedings, provided detention does not continue for a prolonged period of time. <u>See</u> 8 U.S.C. § 1226(c); <u>Diop v. ICE/Homeland Sec.</u>, 656 F. 3d at 232

---

[4] Section 1226(b) authorizes the Attorney General to "at any time . . . revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b).

6

("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community").

Section 1226 provides in full:

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) of this section and pending such decision, the Attorney General –

(1) may continue to detain the arrested alien; and

(2) may release the alien on –

(A) bond of at least $1,500 . . ; or

(B) conditional parole; but

(3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.

(b) Revocation of bond or parole

The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien.

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who -

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226.

Under § 1231(a)(1)(B), the removal period begins at the latest of several events, including the date of the final order of the Court of Appeals, if the removal order is judicially reviewed and the Court has ordered a stay of removal. Specifically,

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

C.  Reasonableness of Bete's Detention

In this case, there is no dispute that Bete's removal period has not begun, in light of the fact that the Third Circuit is reviewing Bete's order of removal and has issued a stay.  See Leslie, __ F.3d ___, ___, 2012 WL 898614 at *4 (holding that, where Third Circuit stayed removal pending outcome of Leslie's petition for review, Leslie was detained "pre-removal" pursuant to § 1226); 8 U.S.C. § 1231(a)(1)(B).  Accordingly, Bete's § Petition, as written, requires this Court to resolve a single issue:  whether Bete's pre-removal period detention for 12 months (since March 25, 2011) is unreasonable in length under Diop, 656 F.3d at 223.

In Diop, the Third Circuit held that 8 U.S.C. "§ 1226(c) contains an implicit limitation of reasonableness:  the statute authorizes only mandatory detention that is reasonable in length . . . . Should the length of [an alien's] detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof."  Diop, 656 F.3d at 235.  The Third Circuit held that Diop's mandatory pre-removal period detention of 35 months was unreasonable in length.  Id. at 233.  The Circuit determined  reasonableness as follows:

Demore emphasized that mandatory detention pursuant to § 1226(c) lasts only for a "very limited time" in the vast majority of cases. 538 U.S. at 529 & n. 12.  In

9

fact, Demore relied on statistics showing that detention under § 1226(c) "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which an alien chooses to appeal." Id. at 530. This leads us to believe that the result may well have been different had the petitioner in Demore been detained for significantly longer than the average. Indeed, the petitioner in Demore had been detained for only slightly longer than the average (6 months) when his habeas petition was decided. Assuming, without deciding, that this was a presumably reasonable period of detention, and comparing it to Diop's 35 months of detention, which was nearly six times longer, leads us to conclude that Diop's detention, without any post-Joseph hearing inquiry into whether it was necessary to accomplish the purposes of § 1226(c), was unreasonable.

The Government argues that there was no "unreasonable delay" in Diop's proceedings because he was given continuances to find an attorney, to draft an application for asylum and withholding of removal, and because he took several appeals. Diop responds that the delay is attributable to the immigration judge's continued errors, which necessitated the appeals and remands. We agree with the Government that the reasonableness determination must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case. But we also conclude that reasonableness must take into account errors in the proceedings that cause unnecessary delay. No system of justice can be error-free, and those errors require time to fix. Nevertheless, in this case the immigration judge's numerous errors, combined with the Government's failure to secure, at the earliest possible time, evidence that bore directly on the issue of whether Diop was properly detained, resulted in an unreasonable delay.

We cannot simply rely on the Government's determination of what is reasonable . . . . [C]ourts reviewing petitions for writ of habeas corpus must exercise their independent judgment as to what is reasonable . . . . In Zadvydas, the Supreme Court adopted a presumption that six months of detention pursuant to the post-removal statute was reasonable . . . . We decline to adopt such a one-size-fits-all approach. Reasonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case. That being said, we note that the reasonableness of any given detention pursuant to § 1226(c) is a function of whether it is necessary to fulfill the purpose of the statute, and, given that Congress and the Supreme Court believed those purposes would be fulfilled in the vast majority of cases within a month and a half, and five months at the maximum, see Demore, 538 U.S. at 530, the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past those thresholds. In this case, there can be no question that Diop's detention for nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or

10

to prevent a risk of danger to the community, was unreasonable and, therefore, a violation of the Due Process Clause.

Diop, 656 F.3d at 233-35 (citations omitted).

Recently, the Third Circuit applied Diop and determined that the pre-removal period detention of Neville Leslie, a citizen of Jamaica, was unreasonable in length where Leslie had been detained nearly four full years (March 28, 2008, through March 19, 2012).  See Leslie v. Attorney General of U.S., ___ F.3d ___, 2012 WL 898614 (3d Cir. Mar. 19, 2012).  Leslie was taken into DHS custody on March 28, 2008, the Immigration Judge ordered his removal to Jamaica on April 16, 2008, based on his commission of an aggravated felony, the BIA dismissed his first administrative appeal on July 11, 2008, Leslie filed a petition for review on July 21, 2008, the Third Circuit granted a stay of removal on August 14, 2008, and on July 8, 2010, the Third Circuit granted the petition for review and remanded for a new removal hearing.  Id. at *1.  Leslie, who had been detained during this entire time, filed a § 2241 petition in the District Court on February 2, 2011, while he was awaiting his hearing before the Immigration Judge on remand.  Id. at *2.  Leslie requested and was granted an adjournment by the Immigration Judge, and on March 30, 2011, the Immigration Judge again ordered his removal.  Id.  Leslie appealed to the BIA again, and the BIA remanded because the audio recording of the hearing before the Immigration Judge was missing.  On May 10, 2011, the District Court denied the § 2241 petition "without prejudice to future requests when, and if, Leslie's continued detention becomes sufficiently prolonged to trigger constitutional concerns."  Id.  The Immigration Judge ordered Leslie removed again on December 15, 2011, Leslie again appealed to the BIA, and the second

11

administrative appeal was pending at the time the Third Circuit reversed the order dismissing the § 2241 petition.  Id.

The Third Circuit compared Leslie's four-year detention to Diop's almost three-year detention, and concluded that Leslie's detention was unreasonable:

> A comparison of Leslie's detention to Diop's makes clear that Leslie's detention is unreasonable.  In the present case, Leslie has been detained over a year longer than Diop had been.  Although Leslie has requested and received a single continuance during that time, that continuance lasted for approximately five weeks, and cannot credibly be considered as a factor in the length of his detention.  To the extent that his detention has exceeded the expected five month period for an appealed removal case, that extra time has been the result of appeals in which Leslie has prevailed; his initial appeal to this court was pending for nearly two years.  Following this court's order in that appeal, Leslie's next hearing was not scheduled for almost seven months, and following that hearing, approximately six months passed during the pendency of Leslie's appeal to the BIA, which was delayed and ultimately remanded for further proceedings, due entirely to clerical errors made by the immigration judge.  "Although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take." Ly v. Hansen, 351 F.3d 263, 272 (6th Cir.2003).
>
> In short, over the course of his nearly four year detention, Leslie is responsible for a five week delay for unspecified medical reasons, and for the delay caused by his pursuit of bona fide legal challenges to his removal.  To conclude that Leslie's voluntary pursuit of such challenges renders the corresponding increase in time of detention reasonable, would "effectively punish [Leslie] for pursuing applicable legal remedies," Oyedeji v. Ashcroft, 332 F.Supp.2d 747, 753 (M.D. Pa.2004), and we decline the government's invitation to adopt such a position.

Leslie, 2012 WL 898614 at *4-*5.

District Courts in this circuit considering the reasonableness of pre-removal period detention under Diop have reached varying conclusions.  For example, Chief Judge Yvette Kane ruled that an alien's seven-month pre-removal period detention under § 1226(c) was not unreasonably prolonged, since the Supreme Court had found the petitioner's six-month detention constitutional in Demore.  See Hernandez v. Sabol, ___ F. Supp. 2d ___, 2011 WL 4949003 *5

(M.D. Pa. Oct. 18, 2011).  Judge William J. Martini held that, where the petitioner's detention was a result of his having requested 10 continuances before the Immigration Judge, his pre-removal period detention for 18 months was not unreasonable.  See Maynard v. Hendrix, 2011 WL 6176202 (D.N.J. Dec. 12, 2011).  On the other hand, Judge Christopher C. Conner held that, where the Board of Immigration Appeals had remanded the matter to the Immigration Judge once, the Immigration Judge had again ordered Gupta's removal to India, and a second appeal to the BIA was pending, Gupta's pre-removal period detention for 20 months was unreasonable under Diop.  See Gupta v. Sabol, 2011 WL 3897964 *3 (M.D. Pa. Sept. 6, 2011).[5]

In this case, a comparison of Bete's detention to Diop's and Leslie's indicates that Bete's detention for 12 months is not unreasonable.  Bete has been detained for one-third as long as Diop, and one-fourth as long as Leslie.  Bete is responsible for 21 days of his 12-month detention, since he requested a 21-day continuance of the removal hearing and, unlike Diop and Leslie, none of the time in excess of the six months found constitutional in Demore was a result of any appeals in which Bete has prevailed.  This Court is not prepared to presume that the Third Circuit will take an unreasonably long time to decide Bete's petition for review.  Under these circumstances, this Court finds that Bete's 12-month detention has not become unreasonable in length.  This Court will therefore dismiss the Petition.  This Court emphasizes, however, that the

---

[5] "The past procedural history of this matter, combined with ICE's inflexible guidelines governing mandatory detention under Section 236(c) of the INA, leads this Court to conclude that the administrative and appellate process will be time-consuming and could result in petitioner being detained for many months in addition to the twenty months he has already spent in custody.  Such prolonged detention is not reasonable.  Accordingly, the court will grant the petition for writ of habeas corpus."  Gupta 2011 WL 3897964 *3.

dismissal is without prejudice to Bete's filing another § 2241 petition in the event that his petition for review is not decided within a reasonable period.

### III.  CONCLUSION

For the reasons set forth above, the Court dismisses the Petition without prejudice.


_____ s/ Stanley R. Chesler _____
**STANLEY R. CHESLER, U.S.D.J.**


DATED: March 29, 2012

14